# EXHIBIT 1

Skip to Main Content Logout My Account Search Menu Search Refine Search  Back   Location : All Courts   Images

# REGISTER OF ACTIONS
## CASE NO. D-619-CV-2021-00108

| Cecilia Venzor Bernal v. Ford Motor Company, et. al. | §<br>§<br>§<br>§<br>§<br>§ | Case Type: | **Tort Malpractice, Product Liability** |
|---|---|---|---|
| | | Date Filed: | **05/07/2021** |
| | | Location: | |
| | | Judicial Officer: | **DeLaney, Jennifer E.** |

---

### PARTY INFORMATION

| | | **Attorneys** |
|---|---|---|
| **Defendant** | **Ford Motor Company**<br>726 E. Michigan Drive<br>Hobbs, NM 88240 | |
| **Defendant** | **U-Haul Co. of New Mexico, Inc.**<br>C T Corporation System<br>206 S. Coronado Ave.<br>Espanola, NM 87532 | |
| **Intervenor** | **Delgado, Ezequiel** | **James Bryce Kennedy, Jr.**<br>*Retained*<br>915-544-5200(W) |
| **Plaintiff** | **Venzor Bernal, Cecilia**<br>c/o The Ammons Law Firm<br>3700 Montrose Blvd.<br>Houston, TX 77006 | **Robert Earl Ammons**<br>*Retained*<br>713-523-1606(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | |
|---|---|---|---|
| 05/07/2021 | **Cause Of Actions** | Tort: Personal Injury Auto | |
| | Filed By: | Venzor Bernal, Cecilia | |
| | Filed Against: | Ford Motor Company, U-Haul Co. of New Mexico, Inc. | |
| | Action Type | Action | |
| 05/07/2021 | **OPN: COMPLAINT** | | |
| | *Plaintiff's Complaint for Damages. (16 pgs)* | | |
| 05/07/2021 | **SUMMONS ISSUED** | | |
| | *(3 pgs)* | | |
| 05/07/2021 | **SUMMONS ISSUED** | | |
| | *(3 pgs)* | | |
| 05/07/2021 | **Summons** | | |
| | Ford Motor Company | Served | 06/01/2021 |
| | | Response Due | 07/01/2021 |
| | | Returned | 06/04/2021 |
| | U-Haul Co. of New Mexico, Inc. | Served | 05/14/2021 |
| | | Response Received | 06/18/2021 |
| | | Returned | 06/04/2021 |
| 06/04/2021 | **RETURN OF SERVICE** | | |
| | *Kimberlie Flauto accepted service obo Ford Motor Company on 06/01/21: 1 pg* | | |
| 06/04/2021 | **RETURN OF SERVICE** | | |
| | *On 05/14/21 Judy Romero accepted service obo U-Haul Co. -1 pg-* | | |
| 06/18/2021 | **JURY DEMAND 12 PERSON** | | |
| | *UHAUL of New Mexico's Jury Demand (2 pgs:)* | | |
| 06/18/2021 | **RESPONSE** | | |
| | *(16 pgs)* | | |
| 06/29/2021 | **MTN: TO INTERVENE** | | |
| | *(21 pgs)* | | |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Defendant** U-Haul Co. of New Mexico, Inc. | | | |
| Total Financial Assessment | | | 300.00 |
| Total Payments and Credits | | | 300.00 |
| **Balance Due as of 06/30/2021** | | | **0.00** |
| | | | |
| 06/18/2021 | Transaction Assessment | | 300.00 |
| 06/18/2021 | File & Serve Payment | Receipt # DEMD-2021-852 | U-Haul Co. of New Mexico, Inc. | (300.00) |

**Plaintiff** Venzor Bernal, Cecilia
Total Financial Assessment                                                                  132.00
Total Payments and Credits                                                                  132.00
**Balance Due as of 06/30/2021**                                                              **0.00**

| 05/07/2021 | Transaction Assessment | | | 132.00 |
| 05/07/2021 | File & Serve Payment | Receipt # DEMD-2021-646 | Venzor Bernal, Cecilia | (132.00) |

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
5/7/2021 10:23 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Angela Rodriguez

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

CECELIA VENZOR BERNAL,　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　Plaintiff,　　　　　　　　§
　　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§　　No. _____
FORD MOTOR COMPANY and　　　　　§　　　　　　D-619-CV-2021-00108
U-HAUL CO. OF NEW MEXICO, INC.;　§
　　　　　　　　　　　　　　　　　§　　　　DeLaney, Jennifer E.
　　　　Defendants.　　　　　　　§

## PLAINTIFF'S COMPLAINT FOR DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

　　　　COMES NOW Plaintiff, CECELIA VENZOR BERNAL, by and through her attorneys, The Ammons Law Firm, L.L.P. (Robert E. Ammons, Esq.) and states the following as her Original Complaint:

## I.　　PARTIES, VENUE, AND JURISDICTION

1.　　Plaintiff Cecelia Venzor Bernal is an individual who may be contacted through counsel.

2.　　Defendant Ford Motor Company ("Ford") is a Delaware corporation with headquarters in Michigan. Ford is engaged in and deriving profit from conducting business in the state of New Mexico through the distribution of its products in the stream of commerce in New Mexico, and Ford's defective product injured Plaintiff. Ford can be served through its registered agent, Corporation Process Company, at 726 E. Michigan Dr., Hobbs, New Mexico 88240, and the issuance of papers for service is requested at this time.

3.　　Defendant Ford researched, developed, designed, manufactured, marketed, and inspected or failed to inspect, tested or failed to test, assembled, warranted, sold, and placed into the stream

of commerce in New Mexico the 1994 model LN9000, one of which caused injury to Plaintiff. As

such, Defendant Ford is subject to personal jurisdiction in the State of New Mexico.

4.      This Court has specific personal jurisdiction over Defendant Ford because:

- Ford has consented to jurisdiction in New Mexico by registering an agent for service of process under the New Mexico Business Corporation Act.

- Under New Mexico's long-arm statute, Ford's negligent acts regarding its research, development, design, assembly, manufacture, inspection, testing, marketing, sale, distribution, warranting, monitoring, and disseminating warnings in connection with the subject truck caused injury within New Mexico and resulted in a tortious act committed within New Mexico;

- Ford purposefully established contact with New Mexico through acts by which Ford purposefully availed itself of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of its laws;

- Ford directly targets marketing to, and franchises within, New Mexico, and sets prices in the New Mexico market in conjunction with contracts between Ford and New Mexico businesses;

- The Plaintiff's causes of actions are connected with or relate to or lie in the wake of Ford's activities related to the manufacture and research and development and design implementation and testing and in-field monitoring and warranting and warning dissemination in relation to trucks such as the subject truck, as well as countless other Ford trucks directed into the New Mexico market;

- Ford participated in the design and manufacture of the defectively designed truck which failed in a catastrophic manner in New Mexico that resulted in the damages suffered by Plaintiff as set forth below;

- Ford intentionally, purposefully, and persistently solicited the business of New Mexico customers;

- Ford produced television commercials that could be and were viewed by potential customers in New Mexico;

- Ford performed work for New Mexico residents and purposefully availed itself of the benefits and protections of New Mexico in that it would have the right to sue a customer in New Mexico courts for the failure to pay;

- Ford's conduct, contacts, and connection with New Mexico are such that it should reasonably anticipate being haled into court in New Mexico;

- The flow of Ford trucks into New Mexico through the stream of commerce was purposeful and with Ford's knowledge;

- Ford delivered its products into the stream of commerce with the expectation that the products will be purchased by consumers in New Mexico;

- Ford places its products into the stream of commerce by targeting New Mexico through approved Ford dealers throughout the state;

- Ford voluntarily chose to sell its products to be sold from retailers across New Mexico, transferred from hand to hand and transported from state to state, and so Ford cannot reasonably claim surprise at being held to answer in New Mexico for the damage their product causes;

- Ford has a regular distribution plan for its trucks in New Mexico, and this plan is intended for the commercial benefit to the nonresident Defendant Ford, from which it has derived profits from the sale of its products in New Mexico;

- Ford engages in national marketing of its products that intentionally pervades into the New Mexico market;

- Ford targets marketing specific to New Mexico;

- For each of the past five years, Ford has spent more than $250,000/year to advertise Ford trucks on broadcast television stations that are based in New Mexico and that serve television markets that consist of only counties in New Mexico;

- Ford's advertising includes direct mail to New Mexico residents;

- Ford has employees in New Mexico;

- Ford has franchises in New Mexico;

- Ford owns more than $1,000,000 worth of real property in New Mexico;

- Ford oversees aspects of its product warranty process from within New Mexico;

- Ford sends recall notices related to safety defects into New Mexico;

- Ford directs New Mexico customers to approved Ford service centers to have recall work performed in products initially sold into various states but located in New Mexico at the time of the necessary recall repair and replacement work;

- Ford directs its customers to Ford dealers in New Mexico and elsewhere for the critical safety related tasks of performing recall work and service bulletin services which Ford has delegated to Ford dealers in New Mexico and elsewhere;

- All New Mexico Ford dealerships collect and contribute information to the systems which have variously been known as FMC360, FORDSTAR, OASIS, and CQIS. These interactive databases collect information concerning Ford vehicles which arrive at Ford service departments.

- Ford's Critical Concern Review Group determines whether design and manufacturing issues raise a safety concern based upon information collected by Ford's databases, which includes vehicle data gathered from New Mexico dealerships through Ford's Global Common Quality Indicatory System. These databases are part of Ford's efforts at post-market surveillance of Ford products to ensure Ford understands, detects, and corrects unreasonably dangerous designs.

- Ford is registered to do business in New Mexico and has a registered agent for service of legal process in New Mexico;

- Ford has contractual agreements with New Mexico companies to use Ford's trademarks within New Mexico;

- Ford has purposefully availed itself of the privilege and benefits of conducting activities within New Mexico;

- Ford's negligent acts inside New Mexico and outside New Mexico caused injury within New Mexico;

- The claims in this civil action are connected with or relate to or lie in the wake of Ford's contacts within New Mexico;

- This Court's exercise of jurisdiction over Ford does not violate Ford's constitutional rights under the Due Process Clause;

- This Court's exercise of jurisdiction over Ford does not violate the traditional notions of fair play and substantial justice; and

- It is no burden on Ford to litigate this civil action in New Mexico.

5.      Defendant U-Haul Co. of New Mexico, Inc. ("U-Haul") is a domestic corporation doing business in New Mexico. U-Haul supplied the brakeless tow dolly that the truck was towing at the time of the crash. The resulting crash, in combination with the defective design of the subject Ford vehicle, contributed to Plaintiff's injuries and damages. U-Haul can be served through its registered agent, C T Corporation System, at 206 S. Coronado Ave., Espanola, New Mexico 87532, and the issuance of papers for service is requested at this time.

## II.      JURISDICTION, VENUE AND JOINDER

6.      Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article IV of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, §38-1-16.

7.      Venue is proper in this Court pursuant to NMSA 1978, §38-3-1 because the crash and causes of action originated in Luna County.

8.      Joinder of Plaintiff's claims against Defendants in this action is proper under Rule 1-020, because Plaintiff's claims: (1) arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) questions of law and fact common to all Defendants will arise in this action.

## III.      FACTUAL BACKGROUND

9.      At issue is a 1994 Ford N-Series LN9000 bearing VIN# 1FDYR90L7RVA25545 (the "truck" or "LN9000") that rolled over and was not crashworthy.

10.     On the afternoon of March 22, 2020, Ezequiel Delgado, Jr. was driving the truck on Interstate 10 near Akela, Luna County, New Mexico. The truck was towing a 2013 Kia Sorrento

on the U-Haul brakeless tow dolly. Cecilia Venzor Bernal was seated in the right front seat of the truck as Mr. Delgado's seat-belted passenger.

11.     Mr. Delgado's truck was traveling in the right-hand lane when a tire failed. The U-Haul brakeless tow dolly contributed to the truck-dolly-car combination becoming too unstable to control. As a result, the truck left the road and rolled over, coming to rest on its top. This incident, and the injuries to Ms. Venzor, occurred on Interstate 10 in Luna County.

12.     EMS arrived at the scene, where Ms. Venzor experienced a loss of consciousness. Further evaluation by EMS resulted in the discovery that Ms. Venzor did not have sensation in any extremity as well as no motor function in either of her arms.

13.     Ms. Venzor's safety was severely compromised by the poor performance of the LN9000's occupant protection features during a foreseeable rollover.

14.     Had the truck's roof structure and restraint system been safely designed, the massive injuries that proved catastrophic would not have been suffered by Ms. Venzor. Ford failed to exercise sound engineering judgment in its design of the truck's roof and restraint system.

15.     In the rollover of the truck, the way in which the roof buckled and the degree of the deformation greatly increased the likelihood of the contact that occurred between Ms. Venzor's body and the roof structure.

16.     The truck's roof structure was inadequate to withstand the loading it would receive in foreseeable rollover crashes. Its inherent weakness stems from several design defects.

17.     Ms. Venzor was properly belted according to the official crash report and witnesses at the scene. The truck's seatbelt failed to properly restrain and couple Ms. Venzor to her seat. That failure, in conjunction with the other defects discussed herein, led to excessive occupant excursion that resulted in extensive interaction with the truck's roof structure as it collapsed.

18.     The truck's restraint system, as chosen by Ford, failed to appropriately manage energy in this crash and failed to perform its fundamental purpose: to restrain the occupant. The seatbelt, by design, does not provide reasonable protection in rollovers. As a result, Ms. Venzor was allowed to move laterally and vertically out of her seat.

19.     When the truck began the roll sequence, the seatbelt system and deformation of the roof allowed her head and neck to contact interior structures during the rollover. The injuries to Ms. Venzor included a C3-C4 fracture dislocation and further compression fractures at C6 and T1-T5, resulting in quadriplegia.

20.     Before the day of the crash, U-Haul had rented to Mr. Delgado a tow dolly without brakes to transport the 2013 Kia Sorrento, which weighs more than 3,845 pounds. U-Haul recommended the brakeless tow dolly for this foreseen use with subjective and objective awareness that the tow dolly was being used for the particular purpose of towing a 2013 Kia Sorrento with a known and published weight exceeding 3,845 pounds.

21.     U-Haul was subjectively and objectively aware that renting the brakeless tow dolly for the particular purpose of towing a 2013 Kia Sorrento with a known and published weight exceeding 3,845 pounds violated express New Mexico law (along with the express laws of numerous other states). Indeed, the New Mexico legislature enacted a statute to prevent the very type of crash in this case. NMSA § 66-3-840(A)(3)(a) requires that every "trailer and semitrailer and pole trailer shall be equipped with brakes on all wheels in contact with road surfaces" if the gross vehicle weight is 3,000 pounds or more.

22.     Because the 2013 Kia Sorrento had a known and published weight exceeding 3,845 pounds, this statute applied, and the U-Haul tow dolly should have been equipped with brakes. It was not.

23.     When U-Haul recommended and rented the brakeless tow dolly to Mr. Delgado, it was subjectively and objectively aware of the dangers associated with the fact that New Mexico (and numerous other states) require a trailer to have brakes when used for the specific purposes for which U-Haul rented the brakeless tow dolly to Mr. Delgado. Unlike Mr. Delgado, U-Haul had every reason to know—and did know—the applicable New Mexico regulations.

## IV.     FIRST CAUSE OF ACTION: STRICT LIABILITY (FORD)

24.     Plaintiff repleads paragraphs 1 through 23.

25.     At all times material to this action, Ford was in the business of designing, testing, approving, manufacturing, marketing, distributing, and selling motor vehicles, including the LN9000, for use in New Mexico and elsewhere throughout the United States.

26.     At the time the LN9000 left the control of Ford, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following paragraphs.

27.     The LN9000 was uncrashworthy in its design and manufacture.

28.     The LN9000 lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the LN9000and reasonable means to reduce such risks, dangers, and harms.

29.     The LN9000's roof structure design and manufacture resulted in an unreasonable risk that adequate occupant survival space would not be maintained in the event of a rollover crash.

30.     The LN9000's roof structure was inadequate to protect occupants from foreseeable crash forces because its roof structure does not have the strength necessary to maintain the integrity of the occupant compartment or safety cell and preserve the occupant's survival space.

31.    The LN9000's roof structure design failed to incorporate designs and technologies which would have increased the likelihood that adequate occupant survival space would be maintained during foreseeable crashes like rollovers.

32.    The LN9000's seat belt and restraint system design and manufacture resulted in an unreasonable risk that adequate occupant safety would not be protected in the event of a rollover crash.

33.    The LN9000's seat belt and restraint system were inadequate to protect occupants from foreseeable crash forces.

34.    The LN9000's seat belt and restraint system design failed to incorporate designs and technologies which would have increased occupant protection during foreseeable crashes like rollovers.

35.    The LN9000 was expected by Ford to reach, and did reach, the user or consumer without substantial change to the condition in which it was sold.

36.    The LN9000 malfunctioned while being used by Plaintiff.  Plaintiff provides notice of her intention to rely upon the Malfunction Doctrine (also known as the Malfunction Theory) as set forth in Restatement (Third) of Torts: Products Liability § 3 (1998).

37.    In this instance, it may be inferred that the harm sustained by Cecelia Venzor Bernal was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, because the manner in which Cecelia Venzor Bernal was harmed:  (a) was of the kind that ordinarily occurs as a result of a product defect; and (b) was not, in the particular case, solely the result of causes other than the product defect existing at the time of sale or distribution.

38.     Passengers such as Ms. Venzor were persons who were reasonably expected to use the LN9000, and it was foreseeable that the LN9000 would be involved in a rollover crash or any other crash event.

39.     Defendant Ford had a duty to design the LN9000 and to provide reasonable protection to occupants in the event of such a crash as Ms. Venzor was involved in.

40.     The defects in the LN9000 were a cause of Ms. Venzor's injuries, losses, and damages.

41.     Ford is strictly liable to Cecelia Venzor Bernal for injuries, damages and losses caused by the defects and inadequacies in the design of the LN9000, its component parts, and particularly, the LN9000's roof structure and restraint system.

## V.     SECOND CAUSE OF ACTION: NEGLIGENCE (FORD)

42.     Plaintiff repleads paragraphs 1 through 41.

43.     Defendant Ford negligently designed, tested, approved, manufactured, distributed, and sold the LN9000 and its components in that it failed to exercise reasonable care to prevent the LN9000 and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. The factual basis for Ford's negligence is specified in greater detail in the First Claim for Relief, and further specified in the following paragraphs.

44.     At the time of the design and manufacture of the LN9000, Ford was aware of the dangers of rollover crashes and other crash events.

45.     At the time of the design and manufacture of the LN9000, Ford was aware that reasonable occupant protection in rollover crashes or other crash events, required a vehicle design that would provide reasonable protection against roof collapse or deformation in rollover crashes or other crash events, and that proper roof structure strength provided such reasonable protection in a crash.

46.     At the time of the design and manufacture of the LN9000, Ford was aware that reasonable occupant protection in rollover collisions or other crash events required a rollover protection system, including a seat belt and restraint system, which would reasonably limit force and injury to the occupants of the LN9000.

47.     At the time of the design and manufacture of the LN9000, Ford was aware that reasonable occupant protection in rollover crashes or other crash events required a rollover protection system that would properly provide protection to the drivers and occupants of the LN9000.

48.     Defendant Ford was negligent in failing to exercise reasonable care to prevent the LN9000 from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by it while it was being used in a manner Defendant Ford might reasonably have expected.

49.     Cecelia Venzor Bernal is in that class of persons which Defendant Ford should reasonably have expected to use or be affected by the LN9000.

50.     Defendant Ford was negligent in failing to exercise reasonable care to warn users of the LN9000 of the risk of harm associated with the foreseeable use of the LN9000.

50.     Defendant Ford was negligent in failing to properly test the LN9000 for occupant protection performance in rollover crashes.

51.     A manufacturer has a duty to warn users about the potential for harm arising out of the use of the product. Defendant Ford was negligent in failing to dynamically or properly test its product, specifically the LN9000, to ascertain the inherent dangers.

52.     This negligence resulted in a failure to warn about the truck's inherent dangers, including the deficient rollover protection afforded by the pickup's defective roof structure and restraint

system. The decision to conceal information, the failure to test, and the failure to warn were each producing and proximate causes of the injuries and damages complained of herein.

53.     Ford's negligence was a proximate cause of injuries, damages, and losses to Cecelia Venzor Bernal.

## VI.     THIRD CAUSE OF ACTION: NEGLIGENCE (U-HAUL)

54.     Plaintiff repleads paragraphs 1 through 23.

55.     NMSA § 66-3-840(A)(3)(a) requires that every "trailer and semitrailer and pole trailer shall be equipped with brakes on all wheels in contact with road surfaces" if the gross vehicle weight is 3,000 pounds or more.

56.     NMSA § 66-3-840(A)(3)(a) is a statute enacted for the safety and protection of the public.

57.     Defendant U-Haul violated NMSA § 66-3-840(A)(3)(a) when it designed, manufactured, and rented the subject trailer without brakes.

58.     Cecelia Venzor Bernal, as a passenger in a motor vehicle on a New Mexico highway, was a member of the class of persons intended to be protected by NMSA § 66-3-840(A)(3)(a).

59.     In addition, U-Haul owed a common law duty to Cecelia Venzor Bernal, and other motorists and passengers, to provide safe and appropriate equipment and to provide appropriate instructions on the safe and proper use of all aspects of the towing system.

60.     It is well known in the trailer industry that trailer brakes matter and help control and stop the combination.

61.     It is well known in the trailer industry that whenever a trailer is attached to the back of a tow vehicle, there is degradation of vehicle braking, handling, or stability.

62.     The negligence of U-Haul and its negligent per se violation of NMSA § 66-3-840(A)(3)(a) caused the kind of harm that this statute was intended to prevent.

61.     As a direct and proximate result of the negligence of U-Haul and its negligent per se violation of NMSA § 66-3-840(A)(3)(a), Cecelia Venzor Bernal suffered damages, including but not limited to serious, permanent, and disabling injuries and the other losses listed below.

## VII.     FOURTH CAUSE OF ACTION: STRICT LIABILTY (U-HAUL)

62.     Plaintiff repleads paragraphs 1 through 23.

63.     At all times material to this action, U-Haul was in the business of designing, testing, approving, marketing, distributing, and leasing tow dollies in New Mexico.

64.     At the time the tow dolly left the control of U-Haul, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following paragraphs.

65.     The tow dolly lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the tow dolly and reasonable means to reduce such risks, dangers, and harms.

66.     The tow dolly's lack of brakes resulted in an unsafe and defective condition.

67.     The tow dolly failed to incorporate designs and technologies, namely brakes, which would have decreased the likelihood of the dolly contributing to this and other crashes.

68.     The defects in the tow dolly were a cause of Ms. Venzor's injuries, losses, and damages.

69.     U-Haul is strictly liable to Cecelia Venzor Bernal for injuries, damages and losses caused by the defects and inadequacies in the design of the tow dolly.

## VIII.     DAMAGES

70.     The defective nature of the failed products at issue and the Defendants' wrongful acts, neglect, and carelessness are proximate and producing causes of this incident and the injuries and resulting damages suffered by the Plaintiff.

71.    Plaintiff seeks monetary damages, in amounts to be proven at trial, from the Defendants to compensate for the injuries and damages.

72.    Cecelia Venzor Bernal's damages include, but are not limited to:

     A.     Past and future physical pain and suffering;

     B.     Past and future mental anguish and emotional pain and suffering;

     C.     Past and future impairment and disfigurement;

     D.     Past and future loss of enjoyment of life and the joys and fullness of that life;

     E.     Past and future medical expenses;

     F.     Loss of income and earning capacity;

     G.     Pecuniary loss;

     H.     All other available relief under New Mexico law, including costs and fees.

## IX.    EXEMPLARY DAMAGES

74.    Plaintiff seeks exemplary damages caused by the reckless, grossly negligent, willful, wanton, and malicious behavior (including willful omissions) of Defendants. The actions of Defendants set forth in this Complaint were taken with knowledge and conscious disregard of the associated risks to users and consumers.

## X.    PRE- AND POST-JUDGMENT INTEREST

75.    The Plaintiffs replead paragraphs 1 through 59.

76.    Plaintiff would additionally show that she is entitled to recovery of pre-judgment interest in accordance with law and equity as part of her damages herein, and Plaintiff seeks recovery of pre-judgment interest as provided by law and equity.

## XI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays that Defendants Ford

Motor Company and U-Haul Co. of New Mexico, Inc. be cited to appear and answer and that,

upon final trial hereof, the Plaintiffs have judgment against Defendants Ford Motor Company and

U-Haul Co. of New Mexico, Inc, that they recover damages in accordance with the evidence, that

they recover costs of Court herein expended, that they recover interest, both pre- and post-

judgment, to which they are entitled under the law, and for such other and further relief, both

general and special, legal and equitable, to which they may be justly entitled.


Respectfully submitted,

**THE AMMONS LAW FIRM L.L.P.**

Robert E. Ammons
New Mexico Bar No. 152031
The Ammons Law Firm, L.L.P.
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:    (713) 523-1606
Fax:          (713) 523-4159
rob@ammonslaw.com
adam@ammonslaw.com
melanie@ammonslaw.com

**ATTORNEYS FOR PLAINTIFFS**

**4-206. Summons.**

[For use with District Court Civil Rule 1-004 NMRA]

<table>
<tr><td colspan="2" align="center"><strong>SUMMONS</strong></td></tr>
<tr>
<td>
District Court: <u>6th</u><br>
<u>Luna</u> County, New Mexico<br>
Court Address: 855 S. Platimun Ave.<br>
Deming, NM 88030<br>
Court Telephone Number.: (575) 546-9611
</td>
<td>
Case Number:    D-619-CV-2021-00108<br><br>
Judge:    DeLaney, Jennifer E.
</td>
</tr>
<tr>
<td>
Plaintiff(s):   Cecilia Venzor<br>
v.<br>
Defendant(s):   Ford Motor Co.<br>
   U-Haul Co. of New Mexico, Inc.
</td>
<td>
Defendant Name:   Ford Motor Company<br>
   Corporation Process Company (reg. agent)<br>
Address:   726 E. Michigan Dr.<br>
   Hobbs, NM 88240
</td>
</tr>
</table>

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

      1.     A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

      2.     You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

      3.     You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

      4.     If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

      5.     You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

      6.     If you need an interpreter, you must ask for one in writing.

      7.     You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

      Dated at <u>Luna County</u>, New Mexico, this <u>7th</u> day of <u>May</u>, 20<u>21</u>.

MARGARITA GOMEZ<br>
CLERK OF COURT

By: <u>*Angela M. Rodriguez*</u>
     Deputy

Attorney for Plaintiff or<br>
Plaintiff pro se

| | |
|---|---|
| Name: | Robert E. Ammons |
| Address: | The Ammons Law Firm |
| | 3700 Montrose Blvd. |
| Telephone No.: | Houston, Texas 77006 |
| | Phone: (713) 523-1606 |
| Fax No.: | Fax: (713) 523-4159 |
| Email Address: | rob@ammonslaw.com |

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN[1]

STATE OF NEW MEXICO            )
                                                  )ss
COUNTY OF _____      )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

(*check one box and fill in appropriate blanks*)

[ ]      to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]      to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]      to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]      to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]      to _____, an agent authorized to receive service of process for

defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees:    _____

        _____
        Signature of person making service

        _____
        Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

     1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

     2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007;  by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

**4-206. Summons.**

[For use with District Court Civil Rule 1-004 NMRA]

<table>
<tr><td colspan="2" align="center"><strong>SUMMONS</strong></td></tr>
<tr><td>District Court: <u>6th</u><br>_____ <u>Luna</u> County, New Mexico<br>Court Address: 855 S. Platimun Ave.<br>Deming, NM 88030<br>Court Telephone Number.: (575) 546-9611</td><td>Case Number: D-619-CV-2021-00108<br><br>Judge:<br><br>DeLaney, Jennifer E.</td></tr>
<tr><td>Plaintiff(s): Cecilia Venzor<br>v.<br>Defendant(s): Ford Motor Co.<br>U-Haul Co. of New Mexico</td><td>Defendant Name: U-Haul Co. of New Mexico, Inc.<br>CT Corporation System {reg. agent}<br>206 S. Coronado Ave.<br>Address: Espanola, NM 87532</td></tr>
</table>

<strong>TO THE ABOVE NAMED DEFENDANT(S):</strong> Take notice that

      1.      A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

      2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

      3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

      4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

      5.      You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

      6.      If you need an interpreter, you must ask for one in writing.

      7.      You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

      Dated at <u>Luna County</u>, New Mexico, this <u>7th</u> day of <u>May</u>, 20<u>21</u>.

MARGARITA GOMEZ
CLERK OF COURT

By: *Angela M. Rodriguez*
        Deputy

                                      Attorney for Plaintiff or
                                      Plaintiff pro se

DISTRICT COURT
D.C. SEAL
LUNA COUNTY, NEW MEXICO

| Name: | Robert E. Ammons |
|---|---|
| Address: | The Ammons Law Firm |
| | 3700 Montrose Blvd. |
| Telephone No.: | Houston, Texas 77006 |
| | Phone: (713) 523-1606 |
| Fax No.: | Fax: (713) 523-4159 |
| Email Address: | rob@ammonslaw.com |

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

### RETURN[1]

STATE OF NEW MEXICO      )

                               )ss

COUNTY OF _____     )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to
this lawsuit, and that I served this summons in _____ county on the _____ day of
_____, _____, by delivering a copy of this summons, with a copy of complaint
attached, in the following manner:

(**check one box and fill in appropriate blanks**)

[ ]     to the defendant _____ (*used when defendant accepts a copy of
summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used
when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by
mail or commercial courier service, by delivering a copy of this summons, with a copy of
complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at
the usual place of abode of defendant _____, (*used when the defendant is not
presently at place of abode*) and by mailing by first class mail to the defendant at
_____ (*insert defendant's last known mailing address*) a copy of the summons
and complaint.

[ ]     to _____, the person apparently in charge at the actual place of
business or employment of the defendant and by mailing by first class mail to the defendant at
_____ (*insert defendant's business address*) and by mailing the summons
and complaint by first class mail to the defendant at _____ (*insert defendant's
last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for

defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees:    _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____.[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

USE NOTE

    1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
    2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007;  by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

## AFFIDAVIT OF SERVICE

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
6/4/2021 12:14 PM

State of New Mexico                    County of Luna                    Sixth Judicial District Court

Case Number: D-619-CV-2021-00108

Plaintiff:
**Cecilia Venzor**

vs.

Defendant:
**Ford Motor Co U-Haul Co of New Mexico**

For:
Easy Serve
P.O. Box 52490
Houston, TX 77052

Received these papers on the 26th day of May, 2021 at 4:36 pm to be served on **Ford Motor Company c/o RA: Corporation Process Company, 726 E. Michigan Dr Suite 330, Hobbs, NM 88240.**

I, Mariela Campos, being duly sworn, depose and say that on the **1st day of June, 2021 at 11:01 am, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Summons, Plaintiff's Complaint for Damages** to: **Kimberlie Flauto** at the address of: **726 E. Michigan Dr Suite 330, Hobbs, NM 88240,** who stated they are authorized to accept service for **Ford Motor Company,** and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
6/1/2021  11:01 am  Mariela Campos served Ford Motor Company c/o RA: Corporation Process Company at 726 E. Michigan Dr Suite 330, Hobbs, NM 88240 by hand delivering the documents to Kimberlie Flauto, Legal Assistant and Authorized Agent to accept service.

**Description** of Person Served: Age: ~46, Sex: F, Race/Skin Color: White, Height: 5'8", Weight: 220, Hair: Dark Blonde, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 3rd
day of June, 2021 by the affiant who is personally
known to me.

NOTARY PUBLIC

**Mariela Campos**
Process Server

Our Job Serial Number: MPP-2021002625
Ref: 282840-1

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1n



OFFICIAL SEAL
Norma Chavez-Murphy
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 9/14/2024

**AFFIDAVIT OF SERVICE**

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
6/4/2021 12:32 PM
MARGARITA GOMEZ
Sixth Judicial District Court
DISTRICT COURT CLERK
Amy Cardenas

State of New Mexico                    County of Luna                    Sixth Judicial District Court

Case Number: D-619-CV-2021-00108

Plaintiff:
**Cecilia Venzor**

vs.

Defendant:
**Ford Motor Co U-Haul Co of New Mexico**

For:
Easy Serve
P.O. Box 52490
Houston, TX 77052

Received these papers on the 12th day of May, 2021 at 4:35 pm to be served on **U-Haul Co. of New Mexico, Inc. RA: CT Corporation System, 206 S Coronado Ave, Espanola, NM 87532.**

I, David Martin, being duly sworn, depose and say that on the **14th day of May, 2021 at 9:10 am, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Summons, Plaintiff's Complaint For Damages,** to: **Judy Romero** at the address of: **206 S Coronado Ave, Espanola, NM 87532,** who stated they are authorized to accept service for **U-Haul Co. of New Mexico, Inc.,** and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
5/14/2021  9:10 am  David Martin served U-Haul Co. of New Mexico, Inc. RA: CT Corporation System at 206 S Coronado Ave, Espanola, NM 87532 by hand delivering the documents to Judy Romero, Authorized Agent to accept service.

**Description** of Person Served: Age: ~65, Sex: F, Race/Skin Color: Hispanic, Height: 5'6", Weight: 130, Hair: Black, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 18th
day of May, 2021 by the affiant who is personally
known to me.

NOTARY PUBLIC

**David Martin**
Process Server

Our Job Serial Number: MPP-2021002387
Ref: 282481-1

OFFICIAL SEAL
Norma Chavez-Murphy
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 9/19/2024

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1m

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
6/18/2021 8:51 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Amy Cardenas

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**CECELIA VENZOR BERNAL,**

   **No. D-619-CV-2021-00108**

  **Plaintiff,**      **Judge Jennifer E. DeLaney**

v.

**FORD MOTOR COMPANY and**
**U-HAUL CO. OF NEW MEXICO, INC.,**

  **Defendants.**

## DEFENDANT U-HAUL CO. OF NEW MEXICO, INC.'S ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

  Defendant **U-HAUL CO. OF NEW MEXICO, INC.** ("UHNM" or "Defendant") files

this Answer to Plaintiff's Complaint and would respectfully show the Court as follows:

### I.  PARTIES, VENUE, AND JURISDICTION

  1.  UHNM is without sufficient knowledge or information to admit or deny the

allegations of Paragraph 1, and therefore denies the same.

  2.  UHNM is without sufficient knowledge or information to admit or deny the

allegations of Paragraph 2, and therefore denies the same.

  3.  UHNM is without sufficient knowledge or information to admit or deny the

allegations of Paragraph 3, and therefore denies the same.

  4.  UHNM is without sufficient knowledge or information to admit or deny the

allegations of Paragraph 4 or its sub-parts, and therefore denies the same.

  5.  UHNM admits it is a New Mexico corporation doing business in New Mexico.

UHNM denies that it supplied the subject U-Haul tow dolly ("subject tow dolly") equipment being

used at the time of the crash, or that UHNM had any dealings or other interactions with Ezequiel

1

Delgado Jr. or Plaintiff in any way related to the rental of the subject tow dolly. UHNM denies any other allegations of Paragraph 5 not expressly admitted herein.

## II.    JURISDICTION, VENUE, AND JOINDER

6.      UHNM admits it is a New Mexico corporation doing business in New Mexico and therefore subject to the jurisdiction of this Court. To the extent the averments in this paragraph pertain to parties other than UHNM, no response is required. UHNM denies any other allegations of Paragraph 6 not expressly admitted herein.

7.      UHNM is without sufficient knowledge or information to admit or deny the allegations of Paragraph 8 pertaining to the "crash and causes of action originat[ing] in Luna County," and therefore denies the same. UHNM denies any other allegations of Paragraph 7 not expressly admitted herein.

8.      UHNM denies the allegations of Paragraph 8.

## III.    FACTUAL BACKGROND

9.      UHNM is without sufficient knowledge or information to admit or deny the allegations of Paragraph 9, and therefore denies the same.

10.      Upon information and belief, UHNM admits that Ezequiel Delgado Jr. was driving a vehicle on Interstate 10 near Akela, Luna County, New Mexico on March 22, 2020. UHNM further admits that Ezequiel Delgado Jr. was towing a 2013 Kia Sorrento on the subject tow dolly. UHNM denies any other allegations of Paragraph 10 not expressly admitted herein.

11.      UHNM expressly denies that the subject tow dolly contributed to the truck-dolly-car combination becoming too unstable to control. UHNM is without sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 11, and therefore denies the same.

2

12.     UHNM is without sufficient knowledge or information to admit or deny the allegations of Paragraph 12, and therefore denies the same.

13.     UHNM is without sufficient knowledge or information to admit or deny the allegations of Paragraph 13, and therefore denies the same.

14.     The allegations of Paragraph 14 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 14 and therefore denies them.

15.     The allegations of Paragraph 15 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 15 and therefore denies them.

16.     The allegations of Paragraph 16 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 16 and therefore denies them.

17.     The allegations of Paragraph 17 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 17 and therefore denies them.

18.     The allegations of Paragraph 18 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies them.

3

19.     The allegations of Paragraph 19 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 19 and therefore denies them.

20.     UHNM denies the allegations of Paragraph 20.

21.     UHNM denies the allegations of Paragraph 21.

22.     Paragraph 22 contains an inaccurate statement of law and legal conclusion, and UHNM denies the allegations of Paragraph 22.

23.     Paragraph 23 contains an inaccurate statement of law and legal conclusion, and UHNM denies the allegations of Paragraph 23.

### IV.     FIRST CAUSE OF ACTION: STRICT LIABILITY (FORD)

24.     UHNM incorporates by reference its answers, denials, and admissions for Paragraphs 1 through 23 as if fully set forth herein.

25.     The allegations of Paragraph 25 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 25 and therefore denies them.

26.     The allegations of Paragraph 26 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 26 and therefore denies them.

27.     The allegations of Paragraph 27 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge

or information to form a belief as to the truth of the allegations of Paragraph 27 and therefore denies them.

28.     The allegations of Paragraph 28 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 28 and therefore denies them.

29.     The allegations of Paragraph 29 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 29 and therefore denies them.

30.     The allegations of Paragraph 30 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 30 and therefore denies them.

31.     The allegations of Paragraph 31 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 31 and therefore denies them.

32.     The allegations of Paragraph 32 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 32 and therefore denies them.

33.     The allegations of Paragraph 33 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge

5

or information to form a belief as to the truth of the allegations of Paragraph 33 and therefore denies them.

34.     The allegations of Paragraph 34 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 34 and therefore denies them.

35.     The allegations of Paragraph 35 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 35 and therefore denies them.

36.     The allegations of Paragraph 36 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 36 and therefore denies them.

37.     UHNM denies the allegations of Paragraph 37.

38.     The allegations of Paragraph 38 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 38 and therefore denies them.

39.     The allegations of Paragraph 39 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 39 and therefore denies them.

40.     The allegations of Paragraph 40 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 40 and therefore denies them.

41.     The allegations of Paragraph 41 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 41 and therefore denies them.

## V.     SECOND CAUSE OF ACTION: NEGLIENCE (FORD)

42.     UHNM incorporates by reference its answers, denials, and admissions for Paragraphs 1 through 41 as if fully set forth herein.

43.     The allegations of Paragraph 43 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 43 and therefore denies them.

44.     The allegations of Paragraph 44 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 44 and therefore denies them.

45.     The allegations of Paragraph 45 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 45 and therefore denies them.

46.     The allegations of Paragraph 46 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 46 and therefore denies them.

47.     The allegations of Paragraph 47 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 47 and therefore denies them.

48.     The allegations of Paragraph 48 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 48 and therefore denies them.

49.     The allegations of Paragraph 49 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 49 and therefore denies them.

50.     The allegations of Paragraph 50 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 50 and therefore denies them.

51.     The allegations of Paragraph 51 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 51 and therefore denies them.

52.     The allegations of Paragraph 52 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 52 and therefore denies them.

53.     The allegations of Paragraph 53 of are not directed to UHNM, and therefore, no response is required.  To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 53 and therefore denies them.

## VI.     THIRD CAUSE OF ACTION: NEGLIGENCE (U-HAUL)

54.     UHNM incorporates by reference its answers, denials, and admissions for Paragraphs 1 through 23 as if fully set forth herein.

55.     Paragraph 55 is a statement of law and legal conclusion to which no response is required.

56.     Paragraph 56 is a statement of law and legal conclusion to which no response is required.

57.     UHNM denies the allegations of Paragraph 57.

58.     Paragraph 58 is a statement of law and legal conclusion to which no response is required.  To the extent a response is required, UHNM denies the allegations of Paragraph 58 to the extent that they allege or imply liability for any negligence or wrongdoing on the part of UHNM.

59.      Paragraph 59 is a statement of law and legal conclusion to which no response is required.   To the extent a response is required, UHNM denies the allegations of Paragraph 59 to the extent that they allege or imply liability any duty owed by UHNM, or any negligence or wrongdoing on the part of UHNM.

9

60.     Paragraph 60 contains a statement that does not pertain to UHNM, and therefore, no response is required.   To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 60 and therefore denies them.

61.     Paragraph 61 contains a statement that does not pertain to UHNM, and therefore, no response is required.   To the extent a response is required, UHNM is without sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 61 and therefore denies them.

62.     UHNM denies the allegations of Paragraph 62.

61*.[1]   UHNM denies the allegations of Paragraph 61*.

**VII.     FOURTH CAUSE OF ACTION: STRICT LIABILITY (U-HAUL)**

62*.     UHNM repleads its denials and admissions for Paragraphs 1 through 23 as if fully set forth herein.

63.     UHNM admits it was in the business of marketing, distributing, and leasing tow dollies in New Mexico, but expressly denies that it was the lessor or owner of the subject tow dolly at the time of the accident, expressly denies that it had anything to do with the subject tow dolly which was rented in Tucson, Arizona, expressly denies that UHNM supplied the subject tow dolly, and expressly denies that UHNM had any dealings or other interactions with Ezequiel Delgado Jr. or Plaintiff in any way related to the lease of the subject tow dolly.   UHNM further denies that it "was in the business of designing [and] testing" tow dollies.   UHNM denies any other allegations of Paragraph 63 not expressly admitted herein.

---

[1] Plaintiff's Complaint re-lists Paragraphs 61 and 62 twice.

64.     UHNM denies that the subject tow-dolly ever "left the control" of UHNM because UHNM denies that it had anything to do with the subject tow dolly which was rented in Tucson, Arizona.  UHNM denies all other allegations of Paragraph 64.

65.     UHNM denies the allegations of Paragraph 65.

66.     UHNM denies the allegations of Paragraph 66.

67.     UHNM denies the allegations of Paragraph 67.

68.     UHNM denies the allegations of Paragraph 68.

69.     UHNM denies the allegations of Paragraph 69.

### VIII.   DAMAGES

70.     UHNM denies the allegations of Paragraph 70 to the extent that they allege or imply liability any duty owed by UHNM, or any negligence or wrongdoing on the part of UHNM.

71.     Paragraph 71 is a statement of law and legal conclusion to which no response is required.  To the extent a response is required, UHNM denies the allegations of Paragraph 71 to the extent that they allege or imply liability any duty owed by UHNM, or any negligence or wrongdoing on the part of UHNM.

72.     UHNM is without sufficient knowledge or information to admit or deny the allegations of Paragraph 72 and its sub-parts, and therefore denies the same.

73.     Plaintiff's Complaint contains no Paragraph 73 to admit or deny.

### IX.     EXEMPLARY DAMAGES

74.     UHNM denies the allegations of Paragraph 74.

### X.      PRE-AND POST-JUDGMENT INTEREST

75.     UHNM repleads its denials and admissions for Paragraphs 1 through 59 as if fully set forth herein.

11

76.     Paragraph 76 is a statement of law and legal conclusion to which no response is required.  To the extent a response is required, UHNM denies the allegations of Paragraph 76 to the extent that they allege or imply liability any duty owed by UHNM, or any negligence or wrongdoing on the part of UHNM.

## XI.     PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to the relief sought.

## AFFIRMATIVE DEFENSES

1.      All other allegations of Plaintiff's Complaint insofar as they relate to UHNM, and which are not specifically admitted, or explained are hereby denied.

2.      Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted against this Defendant.

3.      Plaintiff's claims fail as a matter of law against this Defendant because UHNM is not a proper party to this action and owed no duty to Plaintiff because it did not design, manufacture, own, lease, rent, or otherwise provide the subject U-Haul tow dolly to Plaintiff, nor did UHNM have any dealings or other interactions with Plaintiff in any way related to the lease of the subject U-Haul tow dolly.  Upon information and belief, all such activities were performed by other third parties.

4.      Plaintiff's Complaint fails to join indispensable or necessary parties.

5.      Plaintiff's claims were proximately caused by the negligent actions or omissions of others whom UHNM had no control and UHNM exercised no duty to control.

6.      Plaintiff's alleged damages were the direct and/or proximate result of the acts and/or omissions of Plaintiff, all of which were the failure to exercise ordinary care and were the sole causes or alternatively proximate causes of the occurrence in question and the alleged damages.

7.     The incident made the basis of this lawsuit was proximately caused by a new and independent, intervening, or superseding cause(s), acts and/or omissions of persons and/or entities or conditions not under the control or supervision of UHNM and for which UHNM should not be held legally liable.

8.     This action is governed by comparative fault.  The fault of Plaintiff and parties over whom Defendant had no control must be compared by the jury at the time of trial, and this Defendant should be held responsible only for its proportionate share of fault, pursuant to the doctrine of pure comparative negligence.

9.     Plaintiff is not entitled to recover against this Defendant because UHNM is not the manufacturer and/or designer of the subject tow dolly and cannot be held liable for any claims sounding in tort for any alleged defect in the subject tow dolly.

10.     UHNM denies generally and specifically that there was any defect in the subject tow dolly when it left the possession of its owner and lessor, who was not UHNM.

11.     The subject tow dolly met all applicable safety standards, regulations, and codes.

12.     The subject tow dolly was accompanied by adequate warnings and instructions.

13.     Plaintiff's damages were proximately caused by product misuse, which was not reasonably foreseeable to UHNM.

14.     No unreasonably risk of injury resulted from any condition of the product or from any reasonable manner of tis use, and therefore, the product was not detective, thereby barring any recovery under strict product liability.

15.     Plaintiff did not rely upon any statement, representation, warranty, or conduct of this Defendant, and did not act upon any such statement, representation, warranty, conduct to her detriment.

13

16.     Defendant states that Plaintiff failed to avoid or mitigate the alleged damages and that any recovery should be reduced, in whole or in part, by the amount of damages Plaintiff could have avoided or mitigated.

17.     This Defendant pleads as a set off any monies received by Plaintiffs for damages suffered in this case, including, but not limited to, any collateral source, insurance proceeds, or settlement proceeds paid by any other defendant or non-party.

18.     Plaintiff's claim for exemplary damages fails as a matter of law because there is no evidence of a culpable mental state or malicious, willful, intentional, or reckless conduct.

19.     Plaintiffs' claim for punitive damages is barred by the Fifth, Eight, and Fourteenth Amendments to the Constitution of the United States of America, as well as Art. I, § 10; Art. II, § 13; and Art. II, § 19 of the Constitution of the State of New Mexico.  Under the facts of this case a demand for punitive damages is not justified, and an award of punitive damages would constitute a denial of equal protection, a denial of due process and/or the imposition of an excessive fine.

20.     The doctrines of res judicata, estoppel (including collateral estoppel and judicial estoppel), laches, waiver, release, consent, ratification, estoppel, unclean hands, failure to read, fraud, accord and satisfaction, and payment and release may bar or limit the claims asserted by Plaintiff.

21.     Because its investigation of the allegations contained in Plaintiff's Complaint is not complete at this time, Defendant hereby gives notice that it may rely upon such other defenses (affirmative or otherwise) as may become available or apparent during the course of discovery and thus reserves the right to amend its answer to assert any such defenses.  Moreover, Defendant reserves the right to subsequently amend its Answer in order to clarify, if necessary, the applicability of any defenses or to withdraw certain defenses.

14

WHEREFORE, U-Haul Co. of New Mexico, Inc. respectfully requests that Plaintiff's complaint be dismissed with prejudice, that U-Haul Co. of New Mexico, Inc. be discharged, and that the Court grants such other and further relief, both general and special, at law and in equity, to which U-Haul Co. of New Mexico, Inc. may be justly entitled.

Respectfully submitted,

McCOY LEAVITT LASKEY LLC

_____

H. Brook Laskey
317 Commercial St. NE< Ste. 200
Albuquerque, New Mexico  87102
(505) 262-0455
blaskey@MLLlaw.com

**ATTORNEY FOR DEFENDANT,
U-HAUL CO. OF NEW MEXICO, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been duly served upon all counsel of record pursuant to the New Mexico Rules of Civil Procedure on this the 18th day of June, 2021.


/s/ *H. Brook Laskey*
H. Brook Laskey

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
6/18/2021 8:51 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Amy Cardenas

STATE OF NEW MEXICO
COUNTY OF LUNA
SIXTH JUDICIAL DISTRICT COURT

CECELIA VENZOR BERNAL

     Plaintiffs,

v.

                             D-619-CV-2021-00108
                             Judge Jennifer E. DeLaney

FORD MOTOR COMPANY and
U-HAUL CO. OF NEW MEXICO, INC.

     Defendants.

## **JURY DEMAND**

     Defendant, U-Haul Co. of New Mexico, Inc., hereby demands a jury trial by a jury of twelve

(12) persons of all issues so triable in the captioned cause.

     Defendant herewith deposits with the Clerk of the Court the sum of Three Hundred Dollars

($300.00) for its jury fee.

Respectfully submitted,

McCOY LEAVITT LASKEY LLC

_____

H. Brook Laskey
317 Commercial St. NE, Ste. 200
Albuquerque, New Mexico  87102
(505) 262-0455
blaskey@MLLlaw.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been duly served upon all counsel of record pursuant to the New Mexico Rules of Civil Procedure on this the 18th day of June, 2021.

/s/ *H. Brook Laskey*
H. Brook Laskey

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
6/29/2021 3:56 PM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Angela Rodriguez

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

CECELIA VENZOR BERNAL,                    §
                                          §
         Plaintiff, and                   §
                                          §
EZEQUIEL DELGADO, Jr.,                    §
                                          §          **No. D-619-CV-2021-00108**
         Intervenor-Plaintiff,            §
                                          §
v.                                        §
                                          §
FORD MOTOR COMPANY and
U-HAUL CO. OF NEW MEXICO, INC.;

         Defendants.

## Motion to Intervene

1.       Comes now, proposed Intervenor-Plaintiff Ezequiel Delgado, and ask this Court for an

order allowing him to intervene in this suit as a party and to fully participate in these proceedings.

In support, Movant states as follows:

2.       The Court has jurisdiction of the parties and subject matter of this suit.

3.       Permissive intervention should be granted because the Ezequiel Delgado's causes of action

and the causes of action filed by Plaintiff Cecelia Venzor Bernal have questions of law and fact in

common. All of these claims concern a single traffic accident caused by Defendants Ford Motor

Company and U-Haul Co. of New Mexico, Inc. On March 22, 2020, Ezequiel Delgado, Jr., was

operating a 1994 Ford N-Series LN9000 bearing VIN# 1FDYR90L7RVA25545 (the "truck" or

"LN9000") that rolled over and was not crashworthy. The truck was towing a 2013 Kia Sorrento

on the U-Haul brakeless tow dolly. Cecilia Venzor Bernal was seated in the right front seat of the

truck as Mr. Delgado's passenger. This incident occurred on Interstate 10 in Luna County.

4.       A pleading is attached setting forth the matters for which intervention is sought. [i]

5.      This intervention will not unduly delay or prejudice adjudication of any party's rights.

6.      Undersigned counsel has conferred with Plaintiff's counsel, who has stated that Plaintiff does not oppose this motion.

## PRAYER

7.      Wherefore, Movant Ezequiel Delgado, Jr., ask that an order be entered granting his Motion to Intervene, that his attached pleading be entered on the docket, and that he be granted any other relief to which he may be justly entitled at law or in equity.

Respectfully Submitted,

**JAMES KENNEDY, P.L.L.C.**
6216 Gateway Blvd. East
El Paso, Texas 79905
(915) 544-5200
FAX (915) 532-2423

By: _____

**JAMES B. KENNEDY, JR.**
State Bar: 8280

*Attorney for Plaintiff*

---

[i] *See* Exh. A (Ezequiel Delgado's Original Complaint in Intervention).

## CERTIFICATE OF SERVICE

I, James B. Kennedy, Jr., do hereby certify that a true and correct copy of the foregoing document was forwarded to **Robert E. Ammons, Esq.** at The Ammons Law Firm, L.L.P., 3700 Montrose Blvd., Houston, TX 77006 and **H. Brook Laskey** at McCoy Leavitt Laskey LLC, 317 Commercial St NE, Ste 200, Albuquerque, NM 87102 on this ____29th____ day of June, 2021 via facsimile.

JAMES B. KENNEDY, JR.

# Exhibit A

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

| | |
|---|---|
| CECELIA VENZOR BERNAL, | § |
| | § |
| Plaintiff, and | § |
| | § |
| EZEQUIEL DELGADO, Jr., | § |
| | § |
| Intervenor-Plaintiff, | § |
| | § |
| v. | § |
| | § |
| FORD MOTOR COMPANY and | § |
| U-HAUL CO. OF NEW MEXICO, INC.; | |
| | |
| Defendants. | |

**No.** D-619-CV-2021-00108

## <u>INTERVERNOR-PLAINTIFF'S COMPLAINT FOR DAMAGES</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Intervenor-Plaintiff, Ezequiel Delgado, Jr., by and through his attorney, James Kennedy, Jr., (James Kennedy PLLC) and states the following as hIS Original Complaint:

## I.    <u>PARTIES, VENUE, AND JURISDICTION</u>

1.     Intervenor-Plaintiff Ezequiel Delgado, Jr., is an individual who may be contacted through counsel.

2.     Plaintiff Cecelia Venzor Bernal is an individual who may be contacted through counsel.

3.     Defendant Ford Motor Company ("Ford") is a Delaware corporation with headquarters in Michigan. Ford is engaged in and deriving profit from conducting business in the state of New Mexico through the distribution of its products in the stream of commerce in New Mexico, and Ford's defective product injured Plaintiff. Ford can be served through its registered agent, Corporation Process Company, at 726 E. Michigan Dr., Hobbs, New Mexico 88240, and the issuance of papers for service is requested at this time.

4.      Defendant Ford researched, developed, designed, manufactured, marketed, and inspected or failed to inspect, tested or failed to test, assembled, warranted, sold, and placed into the stream of commerce in New Mexico the 1994 model LN9000, one of which caused injury to Plaintiff. As such, Defendant Ford is subject to personal jurisdiction in the State of New Mexico.

5.      This Court has specific personal jurisdiction over Defendant Ford because:

- Ford has consented to jurisdiction in New Mexico by registering an agent for service of process under the New Mexico Business Corporation Act.

- Under New Mexico's long-arm statute, Ford's negligent acts regarding its research, development, design, assembly, manufacture, inspection, testing, marketing, sale, distribution, warranting, monitoring, and disseminating warnings in connection with the subject truck caused injury within New Mexico and resulted in a tortious act committed within New Mexico;

- Ford purposefully established contact with New Mexico through acts by which Ford purposefully availed itself of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of its laws;

- Ford directly targets marketing to, and franchises within, New Mexico, and sets prices in the New Mexico market in conjunction with contracts between Ford and New Mexico businesses;

- The Intervenor-Plaintiff's causes of actions are connected with or relate to or lie in the wake of Ford's activities related to the manufacture and research and development and design implementation and testing and in-field monitoring and warranting and warning dissemination in relation to trucks such as the

subject truck, as well as countless other Ford trucks directed into the New Mexico market;

- Ford participated in the design and manufacture of the defectively designed truck which failed in a catastrophic manner in New Mexico that resulted in the damages suffered by Plaintiff as set forth below;

- Ford intentionally, purposefully, and persistently solicited the business of New Mexico customers;

- Ford produced television commercials that could be and were viewed by potential customers in New Mexico;

- Ford performed work for New Mexico residents and purposefully availed itself of the benefits and protections of New Mexico in that it would have the right to sue a customer in New Mexico courts for the failure to pay;

- Ford's conduct, contacts, and connection with New Mexico are such that it should reasonably anticipate being haled into court in New Mexico;

- The flow of Ford trucks into New Mexico through the stream of commerce was purposeful and with Ford's knowledge;

- Ford delivered its products into the stream of commerce with the expectation that the products will be purchased by consumers in New Mexico;

- Ford places its products into the stream of commerce by targeting New Mexico through approved Ford dealers throughout the state;

- Ford voluntarily chose to sell its products to be sold from retailers across New Mexico, transferred from hand to hand and transported from state to state, and

so Ford cannot reasonably claim surprise at being held to answer in New Mexico for the damage their product causes;

- Ford has a regular distribution plan for its trucks in New Mexico, and this plan is intended for the commercial benefit to the nonresident Defendant Ford, from which it has derived profits from the sale of its products in New Mexico;

- Ford engages in national marketing of its products that intentionally pervades into the New Mexico market;

- Ford targets marketing specific to New Mexico;

- For each of the past five years, Ford has spent more than $250,000/year to advertise Ford trucks on broadcast television stations that are based in New Mexico and that serve television markets that consist of only counties in New Mexico;

- Ford's advertising includes direct mail to New Mexico residents;

- Ford has employees in New Mexico;

- Ford has franchises in New Mexico;

- Ford owns more than $1,000,000 worth of real property in New Mexico;

- Ford oversees aspects of its product warranty process from within New Mexico;

- Ford sends recall notices related to safety defects into New Mexico;

- Ford directs New Mexico customers to approved Ford service centers to have recall work performed in products initially sold into various states but located in New Mexico at the time of the necessary recall repair and replacement work;

- Ford directs its customers to Ford dealers in New Mexico and elsewhere for the critical safety related tasks of performing recall work and service bulletin

services which Ford has delegated to Ford dealers in New Mexico and elsewhere;

- All New Mexico Ford dealerships collect and contribute information to the systems which have variously been known as FMC360, FORDSTAR, OASIS, and CQIS. These interactive databases collect information concerning Ford vehicles which arrive at Ford service departments.

- Ford's Critical Concern Review Group determines whether design and manufacturing issues raise a safety concern based upon information collected by Ford's databases, which includes vehicle data gathered from New Mexico dealerships through Ford's Global Common Quality Indicatory System. These databases are part of Ford's efforts at post-market surveillance of Ford products to ensure Ford understands, detects, and corrects unreasonably dangerous designs.

- Ford is registered to do business in New Mexico and has a registered agent for service of legal process in New Mexico;

- Ford has contractual agreements with New Mexico companies to use Ford's trademarks within New Mexico;

- Ford has purposefully availed itself of the privilege and benefits of conducting activities within New Mexico;

- Ford's negligent acts inside New Mexico and outside New Mexico caused injury within New Mexico;

- The claims in this civil action are connected with or relate to or lie in the wake of Ford's contacts within New Mexico;

- This Court's exercise of jurisdiction over Ford does not violate Ford's constitutional rights under the Due Process Clause;

- This Court's exercise of jurisdiction over Ford does not violate the traditional notions of fair play and substantial justice; and

- It is no burden on Ford to litigate this civil action in New Mexico.

6.     Defendant U-Haul Co. of New Mexico, Inc. ("U-Haul") is a domestic corporation doing business in New Mexico. U-Haul supplied the brakeless tow dolly that the truck was towing at the time of the crash. The resulting crash, in combination with the defective design of the subject Ford vehicle, contributed to Plaintiff's injuries and damages. U-Haul can be served through its registered agent, C T Corporation System, at 206 S. Coronado Ave., Espanola, New Mexico 87532, and the issuance of papers for service is requested at this time.

## II.    JURISDICTION, VENUE AND JOINDER

7.     Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article IV of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, §38-1-16.

8.     Venue is proper in this Court pursuant to NMSA 1978, §38-3-1 because the crash and causes of action originated in Luna County.

9.     Joinder of Intervenor-Plaintiff's claims against Defendants in this action is proper under Rule 1-020, because Plaintiff's claims: (1) arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) questions of law and fact common to all Defendants will arise in this action.

### III.   FACTUAL BACKGROUND

10.   At issue is a 1994 Ford N-Series LN9000 bearing VIN# 1FDYR90L7RVA25545 (the "truck" or "LN9000") that rolled over and was not crashworthy.

11.   On the afternoon of March 22, 2020, Intervenor-Plaintiff's Ezequiel Delgado, Jr. was driving the truck on Interstate 10 near Akela, Luna County, New Mexico. The truck was towing a 2013 Kia Sorrento on the U-Haul brakeless tow dolly. Plaintiff Cecilia Venzor Bernal was seated in the right front seat of the truck as Mr. Delgado's seat-belted passenger.

12.   Intervenor-Plaintiff Ezequiel Delgado's truck was traveling in the right-hand lane when a tire failed. The U-Haul brakeless tow dolly contributed to the truck-dolly-car combination becoming too unstable to control. As a result, the truck left the road and rolled over, coming to rest on its top. This incident, and the injuries to Intervenor-Plaintiff Ezequiel Delgado, occurred on Interstate 10 in Luna County.

13.   Intervenor-Plaintiff Ezequiel Delgado's safety was severely compromised by the poor performance of the LN9000's occupant protection features during a foreseeable rollover.

14.   Had the truck's roof structure and restraint system been safely designed, the massive injuries that proved catastrophic would not have been suffered by Intervenor-Plaintiff Ezequiel Delgado's. Ford failed to exercise sound engineering judgment in its design of the truck's roof and restraint system.

15.   In the rollover of the truck, the way in which the roof buckled and the degree of the deformation greatly increased the likelihood of the contact that occurred between Intervenor-Plaintiff Ezequiel Delgado's body and the roof structure.

16.   The truck's roof structure was inadequate to withstand the loading it would receive in foreseeable rollover crashes. Its inherent weakness stems from several design defects.

17.     Intervenor-Plaintiff Ezequiel Delgado was properly belted according to the official crash report and witnesses at the scene. The truck's seatbelt failed to properly restrain and couple Intervenor-Plaintiff Ezequiel Delgado to his seat. That failure, in conjunction with the other defects discussed herein, led to excessive occupant excursion that resulted in extensive interaction with the truck's roof structure as it collapsed.

18.     The truck's restraint system, as chosen by Ford, failed to appropriately manage energy in this crash and failed to perform its fundamental purpose: to restrain the occupant. The seatbelt, by design, does not provide reasonable protection in rollovers. As a result, Intervenor-Plaintiff Ezequiel Delgado's was allowed to move laterally and vertically out of his seat.

19.     Before the day of the crash, U-Haul had rented to Intervenor-Plaintiff Ezequiel Delgado's a tow dolly without brakes to transport the 2013 Kia Sorrento, which weighs more than 3,845 pounds. U-Haul recommended the brakeless tow dolly for this foreseen use with subjective and objective awareness that the tow dolly was being used for the particular purpose of towing a 2013 Kia Sorrento with a known and published weight exceeding 3,845 pounds.

20.     U-Haul was subjectively and objectively aware that renting the brakeless tow dolly for the particular purpose of towing a 2013 Kia Sorrento with a known and published weight exceeding 3,845 pounds violated express New Mexico law (along with the express laws of numerous other states). Indeed, the New Mexico legislature enacted a statute to prevent the very type of crash in this case. NMSA § 66-3-840(A)(3)(a) requires that every "trailer and semitrailer and pole trailer shall be equipped with brakes on all wheels in contact with road surfaces" if the gross vehicle weight is 3,000 pounds or more.

21.     Because the 2013 Kia Sorrento had a known and published weight exceeding 3,845 pounds, this statute applied, and the U-Haul tow dolly should have been equipped with brakes. It was not.

22.     When U-Haul recommended and rented the brakeless tow dolly to Mr. Delgado, it was subjectively and objectively aware of the dangers associated with the fact that New Mexico (and numerous other states) require a trailer to have brakes when used for the specific purposes for which U-Haul rented the brakeless tow dolly to Mr. Delgado. Unlike Mr. Delgado, U-Haul had every reason to know—and did know—the applicable New Mexico regulations.

## IV.     FIRST CAUSE OF ACTION: STRICT LIABILITY (FORD)

23.     Intervenor-Plaintiff Ezequiel Delgado's repleads paragraphs 1 through 23.

24.     At all times material to this action, Ford was in the business of designing, testing, approving, manufacturing, marketing, distributing, and selling motor vehicles, including the LN9000, for use in New Mexico and elsewhere throughout the United States.

25.     At the time the LN9000 left the control of Ford, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following paragraphs.

26.     The LN9000 was uncrashworthy in its design and manufacture.

27.     The LN9000 lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the LN9000and reasonable means to reduce such risks, dangers, and harms.

28.     The LN9000's roof structure design and manufacture resulted in an unreasonable risk that adequate occupant survival space would not be maintained in the event of a rollover crash.

29.     The LN9000's roof structure was inadequate to protect occupants from foreseeable crash forces because its roof structure does not have the strength necessary to maintain the integrity of the occupant compartment or safety cell and preserve the occupant's survival space.

30.     The LN9000's roof structure design failed to incorporate designs and technologies which would have increased the likelihood that adequate occupant survival space would be maintained during foreseeable crashes like rollovers.

31.     The LN9000's seat belt and restraint system design and manufacture resulted in an unreasonable risk that adequate occupant safety would not be protected in the event of a rollover crash.

32.     The LN9000's seat belt and restraint system were inadequate to protect occupants from foreseeable crash forces.

33.     The LN9000's seat belt and restraint system design failed to incorporate designs and technologies which would have increased occupant protection during foreseeable crashes like rollovers.

34.     The LN9000 was expected by Ford to reach, and did reach, the user or consumer without substantial change to the condition in which it was sold.

35.     The LN9000 malfunctioned while being used by Intervenor-Plaintiff Ezequiel Delgado. Intervenor-Plaintiff Ezequiel Delgado provides notice of his intention to rely upon the Malfunction Doctrine (also known as the Malfunction Theory) as set forth in Restatement (Third) of Torts: Products Liability § 3 (1998).

36.     In this instance, it may be inferred that the harm sustained by Intervenor-Plaintiff Ezequiel Delgado was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, because the manner in which Intervenor-Plaintiff Ezequiel Delgado was harmed:  (a) was of the kind that ordinarily occurs as a result of a product defect; and (b) was not, in the particular case, solely the result of causes other than the product defect existing at the time of sale or distribution.

37.     Passengers such as Intervenor-Plaintiff Ezequiel Delgado were persons who were reasonably expected to use the LN9000, and it was foreseeable that the LN9000 would be involved in a rollover crash or any other crash event.

38.     Defendant Ford had a duty to design the LN9000 and to provide reasonable protection to occupants in the event of such a crash as Intervenor-Plaintiff Ezequiel Delgado's was involved in.

39.     The defects in the LN9000 were a cause of Intervenor-Plaintiff Ezequiel Delgado's injuries and damages.

40.     Ford is strictly liable to Intervenor-Plaintiff Ezequiel Delgado's for injuries, damages and losses caused by the defects and inadequacies in the design of the LN9000, its component parts, and particularly, the LN9000's roof structure and restraint system.

## V.     SECOND CAUSE OF ACTION: NEGLIGENCE (FORD)

41.     Intervenor-Plaintiff Ezequiel Delgado's repleads paragraphs 1 through 41.

42.     Defendant Ford negligently designed, tested, approved, manufactured, distributed, and sold the LN9000 and its components in that it failed to exercise reasonable care to prevent the LN9000 and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. The factual basis for Ford's negligence is specified in greater detail in the First Claim for Relief, and further specified in the following paragraphs.

43.     At the time of the design and manufacture of the LN9000, Ford was aware of the dangers of rollover crashes and other crash events.

44.     At the time of the design and manufacture of the LN9000, Ford was aware that reasonable occupant protection in rollover crashes or other crash events, required a vehicle design that would

provide reasonable protection against roof collapse or deformation in rollover crashes or other crash events, and that proper roof structure strength provided such reasonable protection in a crash.

45.     At the time of the design and manufacture of the LN9000, Ford was aware that reasonable occupant protection in rollover collisions or other crash events required a rollover protection system, including a seat belt and restraint system, which would reasonably limit force and injury to the occupants of the LN9000.

46.     At the time of the design and manufacture of the LN9000, Ford was aware that reasonable occupant protection in rollover crashes or other crash events required a rollover protection system that would properly provide protection to the drivers and occupants of the LN9000.

47.     Defendant Ford was negligent in failing to exercise reasonable care to prevent the LN9000 from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by it while it was being used in a manner Defendant Ford might reasonably have expected.

48.     Intervenor-Plaintiff Ezequiel Delgado is in that class of persons which Defendant Ford should reasonably have expected to use or be affected by the LN9000.

49.     Defendant Ford was negligent in failing to exercise reasonable care to warn users of the LN9000 of the risk of harm associated with the foreseeable use of the LN9000.

50.     Defendant Ford was negligent in failing to properly test the LN9000 for occupant protection performance in rollover crashes.

51.     A manufacturer has a duty to warn users about the potential for harm arising out of the use of the product. Defendant Ford was negligent in failing to dynamically or properly test its product, specifically the LN9000, to ascertain the inherent dangers.

52.    This negligence resulted in a failure to warn about the truck's inherent dangers, including the deficient rollover protection afforded by the pickup's defective roof structure and restraint system. The decision to conceal information, the failure to test, and the failure to warn were each producing and proximate causes of the injuries and damages complained of herein.

53.    Ford's negligence was a proximate cause of injuries, damages, and losses to Intervenor-Plaintiff Ezequiel Delgado.

## VI.    THIRD CAUSE OF ACTION: NEGLIGENCE (U-HAUL)

54.    Plaintiff repleads paragraphs 1 through 23.

55.    NMSA § 66-3-840(A)(3)(a) requires that every "trailer and semitrailer and pole trailer shall be equipped with brakes on all wheels in contact with road surfaces" if the gross vehicle weight is 3,000 pounds or more.

56.    NMSA § 66-3-840(A)(3)(a) is a statute enacted for the safety and protection of the public.

57.    Defendant U-Haul violated NMSA § 66-3-840(A)(3)(a) when it designed, manufactured, and rented the subject trailer without brakes.

58.    Intervenor-Plaintiff Ezequiel Delgado as an operator in a motor vehicle on a New Mexico highway, was a member of the class of persons intended to be protected by NMSA § 66-3-840(A)(3)(a).

59.    In addition, U-Haul owed a common law duty to Intervenor-Plaintiff Ezequiel Delgado, and other motorists and passengers, to provide safe and appropriate equipment and to provide appropriate instructions on the safe and proper use of all aspects of the towing system.

60.    It is well known in the trailer industry that trailer brakes matter and help control and stop the combination.

61.     It is well known in the trailer industry that whenever a trailer is attached to the back of a tow vehicle, there is degradation of vehicle braking, handling, or stability.

62.     The negligence of U-Haul and its negligent per se violation of NMSA § 66-3-840(A)(3)(a) caused the kind of harm that this statute was intended to prevent.

61.     As a direct and proximate result of the negligence of U-Haul and its negligent per se violation of NMSA § 66-3-840(A)(3)(a), Intervenor-Plaintiff Ezequiel Delgado' suffered damages, including but not limited to serious, permanent, and disabling injuries and the other losses listed below.

## VII.   FOURTH CAUSE OF ACTION: STRICT LIABILTY (U-HAUL)

62.     Plaintiff repleads paragraphs 1 through 23.

63.     At all times material to this action, U-Haul was in the business of designing, testing, approving, marketing, distributing, and leasing tow dollies in New Mexico.

64.     At the time the tow dolly left the control of U-Haul, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following paragraphs.

65.     The tow dolly lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the tow dolly and reasonable means to reduce such risks, dangers, and harms.

66.     The tow dolly's lack of brakes resulted in an unsafe and defective condition.

67.     The tow dolly failed to incorporate designs and technologies, namely brakes, which would have decreased the likelihood of the dolly contributing to this and other crashes.

68.     The defects in the tow dolly were a cause of Intervenor-Plaintiff Ezequiel Delgado's injuries, losses, and damages.

69.     U-Haul is strictly liable to Intervenor-Plaintiff Ezequiel Delgado for injuries, damages and losses caused by the defects and inadequacies in the design of the tow dolly.

## VIII.   DAMAGES

70.     The defective nature of the failed products at issue and the Defendants' wrongful acts, neglect, and carelessness are proximate and producing causes of this incident and the injuries and resulting damages suffered by the Intervenor-Plaintiff.

71.     Intervenor-Plaintiff Ezequiel Delgado's seeks monetary damages, in amounts to be proven at trial, from the Defendants to compensate for the injuries and damages.

72.     Intervenor-Plaintiff Ezequiel Delgado's damages include, but are not limited to:

    A.     Past and future physical pain and suffering;

    B.     Past and future mental anguish and emotional pain and suffering;

    C.     Past and future impairment and disfigurement;

    D.     Past and future loss of enjoyment of life and the joys and fullness of that life;

    E.     Past and future medical expenses;

    F.     Loss of income and earning capacity;

    G.     Pecuniary loss;

    H.     All other available relief under New Mexico law, including costs and fees.

## IX.   EXEMPLARY DAMAGES

74.     Intervenor-Plaintiff Ezequiel Delgado seeks exemplary damages caused by the reckless, grossly negligent, willful, wanton, and malicious behavior (including willful omissions) of Defendants. The actions of Defendants set forth in this Complaint were taken with knowledge and conscious disregard of the associated risks to users and consumers.

## X.   PRE- AND POST-JUDGMENT INTEREST

75.    Intervenor-Plaintiff Ezequiel Delgado's replead paragraphs 1 through 59.

76.    Intervenor-Plaintiff Ezequiel Delgado would additionally show that he is entitled to recovery of pre-judgment interest in accordance with law and equity as part of his damages herein, and Intervenor-Plaintiff seeks recovery of pre-judgment interest as provided by law and equity.

## XI.    **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Intervenor-Plaintiff Ezequiel Delgado prays that Defendants Ford Motor Company and U-Haul Co. of New Mexico, Inc. be cited to appear and answer and that, upon final trial hereof, the Plaintiffs have judgment against Defendants Ford Motor Company and U-Haul Co. of New Mexico, Inc, that they recover damages in accordance with the evidence, that they recover costs of Court herein expended, that they recover interest, both pre- and post-judgment, to which they are entitled under the law, and for such other and further relief, both general and special, legal and equitable, to which they may be justly entitled.

JAMES KENNEDY, P.L.L.C.
6216 Gateway Blvd. East
El Paso, Texas 79905
(915) 544-5200
FAX (915) 532-2423

By: _____
JAMES B. KENNEDY, JR.
State Bar: 8280

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, James B. Kennedy, Jr., do hereby certify that a true and correct copy of the foregoing document was forwarded to **Robert E. Ammons, Esq.** at The Ammons Law Firm, L.L.P., 3700 Montrose Blvd., Houston, TX 77006 and **H. Brook Laskey** at McCoy Leavitt Laskey LLC, 317 Commercial St NE, Ste 200, Albuquerque, NM 87102 on this _____ day of June, 2021 via facsimile.

JAMES B. KENNEDY, JR.